IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JIMMY RICHARDSON,

               Petitioner,                    No. 2:11-cv-2996 GEB CKD P

    vs.

WILLIAM KNIPP,

               Respondent.             FINDINGS AND RECOMMENDATIONS

_____/

        Petitioner, a state prisoner, is proceeding pro se with a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  In 2004, petitioner was convicted of assault with a deadly weapon. The jury found that petitioner had two prior "strikes" under the Three Strikes Law, one of which was a 1992 conviction for evading a police officer and causing serious bodily injury.  (Cal. Veh. Code § 2800.3.)  Based in part on this strike, petitioner was sentenced in 2004 to an aggregate prison term of 25 years to life, plus 14 years.  (Dkt. No. 1 ("Ptn.").)

        Petitioner's instant claims dispute that the 1992 incident was a strike.[1]  He argues that (1) the use of live testimony at his 2004 trial to prove the 1992 strike was improper; (2) his appellate counsel was ineffective for failing to argue that a recent California Supreme Court case

---

[1] For brevity's sake, the court will refer to the 2004 finding that petitioner's 1992 evasion conviction constituted a strike as the "1992 strike."

1   was applicable to petitioner; (3) the state courts improperly relied on the facts in a 1993 court

2   opinion to uphold the 1992 strike; (4) the state courts improperly relied on the 1992 plea

3   colloquy to uphold the 1992 strike; and (5) his appellate counsel was ineffective for failing to

4   challenge the admissibility of petitioner's probation report to prove the 1992 strike.

5            Respondent has filed an answer, and petitioner has filed a traverse.  (Dkt. Nos. 17,

6   20.)  Having carefully considered the applicable law and the record, the undersigned will

7   recommend that the petition be denied.

8                                          BACKGROUND

9   I.  Facts

10           The relevant factual background to petitioner's claims is set forth in two separate

11  state court of appeal opinions: an unpublished 2006 decision on direct review and a published

12  2011 decision on habeas review, respectively.  (Lod. Docs. 4, 20.)  The court will set forth the

13  particular facts underlying each claim in the "Claims" section of the instant findings and

14  recommendations.  The general backdrop to petitioner's claims is as follows:

15           After a jury convicted petitioner in 2004 of assaulting his wife with
         a deadly weapon (Pen. Code, § 245, subd. (a)), the court convened
16       a bifurcated jury trial to determine whether petitioner's two prior
         felony convictions qualified as strikes for purposes of sentencing
17       under the "Three Strikes" law.  One of the alleged strikes was a
         1992 conviction for evading a police officer and causing serious
18       bodily injury. (Veh. Code, § 2800.3.)

19       For the evasion conviction to constitute a serious felony and thus a
         strike, the prosecution had to prove the serious bodily injury
20       suffered by the victim constituted great bodily injury for purposes
         of the Three Strikes law, and that the victim who suffered the
21       serious bodily injury from the evasion was not an accomplice.
         (Pen. Code, §§ 1192.7, subd. (c)(8), 1192.8.)  In addition, the
22       evidence supporting these factors had to come from the "record of
         conviction." (People v. Guerrero (1988) 44 Cal.3d 343, 355, 243
23       Cal. Rptr. 688, 748 P.2d 1150 (Guerrero).)

24       . . .

25       Based on [the] evidence [presented], the jury determined the
         victims of the 1992 evasion were not accomplices, and that the
26       prior strike allegations were true.  Pursuant to the Three Strikes

                                               2

1    law, the court sentenced petitioner for the 2004 assault to state
2    prison for 25 years to life, plus 14 years.

3    In re Richardson, 196 Cal. App. 4th 647, 652-657 (2011) (Lod. Doc. 20 at 1-12.).

4    II.  Procedural History

5            After being convicted and sentenced in October 2004, petitioner appealed to the

6    California Court of Appeal, Third Appellate District. (Lod. Doc. 1.)  On August 18, 2006, the

7    court of appeal issued an unpublished opinion in which it found that the trial court erred in

8    permitting the prosecution to present live testimony in 2004 concerning the 1992 strike, but

9    concluded that the error was not prejudicial, and affirmed the judgment.  (Lod. Doc. 4 at 16-21,

10   23.)  Petitioner filed a petition for review in the California Supreme Court (Lod. Doc. 5), which

11   was denied on November 29, 2006.  (Lod. Doc. 11, Ex. B.)  On December 5, 2006, the court of

12   appeal issued a remittitur.  (Lod. Doc. 7.)

13           On December 11, 2006, the California Supreme Court issued a decision in People

14   v. Trujillo, 40 Cal. 4th 165, 179 (2006), holding that a defendant's post-plea admission to a

15   probation officer cannot be admitted to establish that a prior conviction is a strike.

16           Petitioner then filed a petition for writ of habeas corpus in the Sacramento County

17   Superior Court, arguing that his appellate counsel was ineffective for failing to seek a stay of his

18   previous appeal pending the resolution of Trujillo.  (Lod. Doc. 8.)  The superior court requested

19   supplemental briefing and held an evidentiary hearing on May 29, 2009.  (Lod. Doc. 13, Ex. L.)

20   After further briefing by the parties, the superior court issued an order denying the petition on

21   July 31, 2009.  (Lod. Doc. 9; see also Lod. Doc. 13, Ex. M.)

22           Petitioner then filed a petition for writ of habeas corpus in the California Court of

23   Appeal, Third Appellate District.  (Lod. Doc. 10.)  After briefing by the parties, the court denied

24   the petition in a published decision.  (Lod. Doc. 20.)  Petitioner filed a petition for rehearing,

25   which the People answered.  (Lod. Doc. 21, 22.)  The court of appeal issued two orders

26   modifying the published opinion, but denied rehearing.  (Lod. Docs. 23, 24.)

1    Petitioner filed a petition for review in the California Supreme Court, which was

2    denied on September 28, 2011.  (Lod. Docs 25, 26.)  Petitioner filed the instant petition on

3    November 10, 2011.  (Ptn.)

4                                ANALYSIS

5    I.  AEDPA

6    The statutory limitations of federal courts' power to issue habeas corpus relief for

7    persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and

8    Effective Death Penalty Act of 1996 (AEDPA).  The text of § 2254(d) states:

9          An application for a writ of habeas corpus on behalf of a person in
           custody pursuant to the judgment of a State court shall not be
10         granted with respect to any claim that was adjudicated on the
           merits in State court proceedings unless the adjudication of the
11         claim-

12               (1) resulted in a decision that was contrary to, or
                 involved an unreasonable application of, clearly
13               established Federal law, as determined by the
                 Supreme Court of the United States; or
14
                 (2) resulted in a decision that was based on an
15               unreasonable determination of the facts in light of
                 the evidence presented in the State court
16               proceeding.

17   As a preliminary matter, the Supreme Court has recently held and reconfirmed

18   "that § 2254(d) does not require a state court to give reasons before its decision can be deemed to

19   have been 'adjudicated on the merits.'"  Harrington v. Richter, 131 S. Ct. 770, 785 (2011).

20   Rather, "when a federal claim has been presented to a state court and the state court has denied

21   relief, it may be presumed that the state court adjudicated the claim on the merits in the absence

22   of any indication or state-law procedural principles to the contrary."  Id. at 784-785, citing Harris

23   v. Reed, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear

24   whether a decision appearing to rest on federal grounds was decided on another basis).  "The

25   presumption may be overcome when there is reason to think some other explanation for the state

26   court's decision is more likely."  Id. at 785.

                                       4

1    The Supreme Court has set forth the operative standard for federal habeas review

2    of state court decisions under AEDPA as follows:  "For purposes of § 2254(d)(1), 'an

3    *unreasonable* application of federal law is different from an *incorrect* application of federal

4    law.'"  Harrington, supra, 131 S. Ct. at 785, citing Williams v. Taylor, 529 U.S. 362, 410 (2000).

5    "A state court's determination that a claim lacks merit precludes federal habeas relief so long as

6    'fairminded jurists could disagree' on the correctness of the state court's decision."  Id. at 786,

7    citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).  Accordingly, "a habeas court must

8    determine what arguments or theories supported or . . could have supported[] the state court's

9    decision; and then it must ask whether it is possible fairminded jurists could disagree that those

10   arguments or theories are inconsistent with the holding in a prior decision of this Court."  Id.

11   "Evaluating whether a rule application was unreasonable requires considering the rule's

12   specificity.  The more general the rule, the more leeway courts have in reaching outcomes in

13   case-by-case determinations.'"  Id.  Emphasizing the stringency of this standard, which "stops

14   short of imposing a complete bar of federal court relitigation of claims already rejected in state

15   court proceedings[,]" the Supreme Court has cautioned that "even a strong case for relief does

16   not mean the state court's contrary conclusion was unreasonable."  Id., citing Lockyer v.

17   Andrade, 538 U.S. 63, 75 (2003).

18   The undersigned also finds that the same deference is paid to the factual

19   determinations of state courts.  Under § 2254(d)(2), factual findings of the state courts are

20   presumed to be correct subject only to a review of the record which demonstrates that the factual

21   finding(s) "resulted in a decision that was based on an unreasonable determination of the facts in

22   light of the evidence presented in the state court proceeding."  It makes no sense to interpret

23   "unreasonable" in § 2254(d)(2) in a manner different from that same word as it appears in

24   § 2254(d)(1) – i.e., the factual error must be so apparent that "fairminded jurists" examining the

25   same record could not abide by the state court factual determination.  A petitioner must show

26   clearly and convincingly that the factual determination is unreasonable.  See Rice v. Collins, 546

1  U.S. 333, 338 (2006).

2       The habeas corpus petitioner bears the burden of demonstrating the objectively

3  unreasonable nature of the state court decision in light of controlling Supreme Court authority.

4  Woodford v. Viscotti, 537 U.S. 19 (2002).  Specifically, the petitioner "must show that the state

5  court's ruling on the claim being presented in federal court was so lacking in justification that

6  there was an error well understood and comprehended in existing law beyond any possibility for

7  fairminded disagreement."  Harrington, supra, 131 S.Ct. at 786-787.  Clearly established" law is

8  law that has been "squarely addressed" by the United States Supreme Court.  Wright v. Van

9  Patten, 552 U.S. 120, 125 (2008).  Thus, extrapolations of settled law to unique situations will

10  not qualify as clearly established.  See e.g., Carey v. Musladin, 549 U.S. 70, 76 (2006)

11  (established law not permitting state sponsored practices to inject bias into a criminal proceeding

12  by compelling a defendant to wear prison clothing or by unnecessary showing of uniformed

13  guards does not qualify as clearly established law when spectators' conduct is the alleged cause

14  of bias injection).  The established Supreme Court authority reviewed must be a pronouncement

15  on constitutional principles, or other controlling federal law, as opposed to a pronouncement of

16  statutes or rules binding only on federal courts.  Early v. Packer, 537 U.S. 3, 9 (2002).

17       The state courts need not have cited to federal authority, or even have indicated

18  awareness of federal authority in arriving at their decision.  Early, supra, 537 U.S. at 8. Where the

19  state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the

20  federal court will independently review the record in adjudication of that issue.  "Independent

21  review of the record is not de novo review of the constitutional issue, but rather, the only method

22  by which we can determine whether a silent state court decision is objectively unreasonable."

23  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

24       Finally, if the state courts have not adjudicated the merits of the federal issue, no

25  AEDPA deference is given; the issue is reviewed de novo under general principles of federal law.

26  James v. Ryan, __ F.3d __, 2012 WL 639292 at *18-19 (9th Cir. 2012).

1    II.  <u>Petitioner's Claims</u>

2    1. <u>Live Testimony to Prove a Prior Strike</u>

3             Petitioner first challenges the 2004 jury finding (subsequently upheld by state

4    courts) that the two people injured in the course of petitioner's fleeing a police officer in 1992

5    ("the Herzogs") were not petitioner's accomplices – a necessary element for the offense to be a

6    serious felony or "strike."[2]   The trial court in 2004 allowed live testimony by a California

7    Highway Patrol officer on this question, which the state court of appeal subsequently ruled was

8    improper under <u>People v. Guerrero</u>, 44 Cal. 3d 343 (1988).   However, the court of appeal

9    concluded that, in light of other evidence that petitioner acted without accomplices, the trial

10   court's error was harmless.   Petitioner challenges this ruling in Claim 1, arguing that the trial

11   court's error in admitting live testimony to prove the 1992 strike was not harmless.

12            Petitioner first argues that the court of appeal's determination of "harmless error"

13   was an unreasonable determination of the facts under 28 U.S.C. § 2254(d)(2).   He contends that

14   the court of appeal "engaged in strenuous speculation" in concluding that, even without the CHP

15   officer's testimony, the jury would have found that the Herzogs were not petitioner's

16   accomplices.   (Dkt. No. 1 at 14-16; <u>see also</u> Dkt. No. 20 at 8.)   Petitioner also argues that the

17   state courts' determination of harmless error was contrary to clearly established federal law under

18   28 U.S.C. § 2254(d)(1).

19   /////

20   ──────────────

21        [2] A violation of Cal. Vehicle Code section 2800.3 is not specifically enumerated in Cal.
     Penal Code section 667.5(c) or 1192.7(c) as a a "serious" or "violent" felony offense and thus is
22   not "per se" a qualifying strike.   However, Cal. Penal Code section 1192.8(a) provides:

23             For purposes of subdivision (c) of Section 1192.7, 'serious felony'
               also means any violation of . . . Section 2800.3 . . . of the Vehicle
24             Code, when any of these offenses involve the personal infliction of
               great bodily injury on any person other than an accomplice[.]

25   "It is thus apparent that a violation of Vehicle Code section 2800.3 is not a serious felony unless
     (1) the defendant personally inflicted great bodily injury, and (2) the injured person was not an
26   accomplice."   <u>People v. Henly</u>, 72 Cal. App. 4th 555, 559 (1999).

                                                    7

a. Facts

        The Court of Appeal, Third Appellate District, set forth the relevant facts as follows:

        A jury convicted defendant Jimmy Richardson of assaulting his wife with a deadly weapon (Pen. Code, § 245, subd. (a)) FN1 and found that he personally used a knife (§ 12022, subd. (b)(1)) and personally inflicted great bodily injury under circumstances involving domestic violence (§ 12022.7, subd. (e)). The jury deadlocked and a mistrial was declared on a count of attempting to murder his wife. (§§ 187, subd. (a), 664.)

        FN1. Further undesignated statutory references are to the Penal Code.

        In a bifurcated proceeding, the jury found that defendant had suffered a March 1999 prior conviction of assault with a deadly weapon and an October 1992 prior conviction of evading a peace officer and causing serious bodily injury (Veh. Code, § 2800.3).FN2

        FN2. Defendant incorrectly refers to the October 1992 conviction as a "1991" conviction. The offense occurred in July 1992 and his conviction by plea occurred in October 1992.

        Defendant was sentenced to state prison for 25 years to life for the assault (§§ 667, subds.(b)-(I), 1170.12), four years for inflicting great bodily injury (§ 12022.7, subd. (e)), and 10 years for the two prior serious felonies (§ 667, subd. (a)).

        On appeal, defendant claims his third strike sentence must be reversed because neither prior conviction was a strike. Regarding the 1992 prior conviction, he claims the trial court erred by concluding the victims sustained great bodily injury, and by allowing the prosecution to present live testimony as to whether he had an accomplice in that case. . . . We shall affirm the judgment.

        FACTUAL AND PROCEDURAL BACKGROUND

        The facts of the present offense are not at issue and need not be set forth in this opinion.

        The amended information alleged that defendant had been convicted in Sacramento County in 1992 of the crime of evading a peace officer and causing serious bodily injury or death, a violation of Vehicle Code section 2800.3.

        At a pretrial conference in September 2004, the prosecutor stated her theory that this crime was a serious felony pursuant to section

8

1192.7, subdivision (c)(8), which defines a serious felony as including "any felony in which the defendant personally inflicts great bodily injury on any person, other than an accomplice...." The court and parties discussed how the prosecutor could prove (1) that the serious bodily injury amounted to great bodily injury, and (2) that the persons so injured were not defendant's accomplices. The parties considered cases including People v. Henley (1999) 72 Cal.App.4th 555 FN3 and People v. Beltran (2000) 82 Cal.App .4th 693. FN4  The prosecutor stated her position that serious bodily injury amounts to great bodily injury as a matter of law. Defense counsel and the court agreed that the prosecutor could not use the probation report from the 1992 case to prove either of the requirements being discussed, except to the extent that it contained admissions from defendant. Defense counsel also asserted that the prosecutor could not "retry the case" or present evidence "outside of the file."

FN3. People v. Henley (1999) 72 Cal.App.4th 555 rejected an inference that the injured person was not an accomplice, solely because no person was charged jointly with the defendant.

FN4. People v. Beltran (2000) 82 Cal.App.4th 693 held that "great bodily injury" had the same meaning as "serious bodily injury."

The next day, defense counsel filed a motion to dismiss the strike allegation arising from the 1992 conviction. Counsel argued that only the nonhearsay portion of the record of conviction could be used to prove the strike allegation; and that only the police and probation reports from the prior case, both of which were inadmissible hearsay, proved that non accomplices suffered any bodily injury.

At a pretrial hearing that day, defense counsel argued that the probation and police reports did not mention the extent of the victims' injuries and thus did not establish serious injuries or great bodily injury. The court opined that the least adjudicated elements of the Vehicle Code section 2800.3 conviction proved that there was serious bodily injury. The court suggested that serious bodily injury was "congruent to" great bodily injury.  Defense counsel reiterated that the prosecutor could not go beyond the "four corners" of the admissible documents in the court file to prove the elements of the strike.  Counsel further asserted that any elements that had not been contested and adjudicated at the time of the 1992 conviction could never be proved by those documents.

The prosecutor opined that it was the court's job to determine if the 1992 conviction qualified as a serious felony, a question of law. The court doubted that the prosecutor's position remained valid "post Apprendi and Blakely and the like." FN5  Defense counsel reiterated that he was asking the court to determine, as a matter of law, that there was insufficient admissible evidence proving that

the conviction was a serious felony. The court asked the parties to read People v. Woodell (1998) 17 Cal.4th 448 on the issue whether the factfinder could consider an appellate court opinion when determining if a conviction is a serious felony. The court observed that our unpublished opinion affirming the 1992 conviction clearly showed that the injured persons were not accomplices; rather, they were innocent bystanders who occupied a mobile home near the location where defendant crashed his car at the conclusion of the police pursuit.

FN5. Apprendi v. New Jersey (2000) 530 U.S. 466 [147 L.Ed.2d 435]; Blakely v. Washington (2004) 542 U.S. 296 [159 L.Ed.2d 403].

Later, during trial and out of the presence of the jury, the court and counsel again discussed these issues. The prosecutor now agreed that the jury should determine whether defendant's infliction of bodily injury in the 1992 case was upon persons who were not accomplices and amounted to great bodily injury.  The court and parties tentatively agreed that, under People v. Woodell, supra, 17 Cal.4th 448, the jury could consider a certified copy of our opinion in the 1992 case.

After the jury convicted defendant of assault with a deadly weapon and found the knife use and great bodily injury enhancements true, the court ruled, out of the jury's presence, that there was sufficient evidence to present to the jury on the issue whether the 1992 prior conviction was a serious felony. The court then commenced the jury trial on the bifurcated prior conviction allegations.

After a brief opening statement to the jury, the prosecutor called as an expert witness Ross Huggins, a fellow deputy district attorney, with experience in interpreting court records. Huggins testified regarding a package of certified court documents offered to prove defendant's 1992 conviction. The charging document showed that defendant, who was the only listed defendant, was charged with violating Vehicle Code section 2800.3, willfully evading a peace officer causing serious bodily injury or death. The injured persons were Earl Herzog and Beatrice Herzog. The abstract of judgment showed that defendant was convicted by plea of that charge.

Huggins also testified regarding this court's unpublished opinion in the 1992 case. The opinion contained a statement of facts, taken from a probation report in light of defendant's plea. The opinion stated that defendant crashed his vehicle while fleeing from pursuing law enforcement officers, injuring two occupants of a mobile home, whom Huggins concluded must have been the Herzogs. It was reasonable to infer from those facts that the Herzogs were not accomplices in defendant's crime.

Following the presentation of this evidence, the prosecutor asked

10

the jury to find that defendant was convicted of the 1992 offense, that the Herzogs were not accomplices, and that they had suffered serious bodily injury. Defense counsel argued that, because defendant had pleaded no contest rather than guilty to the 1992 charge, he did not really admit that he seriously injured the Herzogs; further, serious injury did not necessarily amount to great bodily injury. The prosecutor responded that defendant's no contest plea had the legal effect of a guilty plea.

The next day, the court and parties met outside the presence of the jury. The court stated its conclusion that it, and not the jury, should determine whether the 1992 conviction involved the infliction of great bodily injury. The court found as a matter of law that "serious bodily injury," as required by Vehicle Code section 2800.3, subdivisions (a) and (d), and as defined in section 243, subdivision (f)(4), is sufficient to constitute "great bodily injury" within the meaning of section 1192.7, subdivision (c)(8).

The court observed that the bare record of the 1992 conviction did not show whether the injured victims were accomplices, because that was not an element of the offense but, rather, was only a requirement for the crime to be a serious felony in a subsequent case. (§ 1192.7, subd. (c)(8).) The court was troubled because, of the documents before it, only the statement of facts in our prior opinion showed that the injured victims were not accomplices; and our statement of facts was based on hearsay from the probation report. The court concluded, based upon its review of relevant case law, that the jury could not consider the statement of facts in our opinion.

The trial court then raised the question whether the prosecutor could present additional evidence, outside the record of the 1992 conviction, to show that the persons who suffered serious bodily injury were not accomplices. The court acknowledged that, under People v. Guerrero (1988) 44 Cal.3d 343 (hereafter Guerrero), the factfinder could look to the entire record of the prior case but no further.  The court concluded that Guerrero's limitation should be reconsidered where, as here, a fact that qualifies a prior crime as a strike was not an element of the crime itself.  The court tentatively ruled that the prosecutor could present evidence outside the record of the 1992 case to show that the victims were not defendant's accomplices, and then invited further argument.

Defense counsel objected, both to the trial court's finding that "the requisite level of injury has been met," and to its ruling that the prosecutor could present evidence outside the record of the 1992 conviction. On the second issue, defense counsel relied on People v. Abarca (1991) 233 Cal.App.3d 1347, which was one of "Guerrero' s progeny."

The prosecutor cited People v. Epps (2001) 25 Cal.4th 19, 23-28,

11

People v. Kelii (1999) 21 Cal.4th 452, 454-459, and People v. Wiley (1995) 9 Cal.4th 580, 589-590, for the proposition that the court, rather than a jury, should decide whether the 1992 conviction qualified as a serious felony. She opined that she should be allowed to present new evidence on the issue whether the injured persons were defendant's accomplices. She also argued that the probation report in the 1992 case contained defendant's de facto admission that he was alone in the car during the incident that led to his conviction; the only reasonable inference from that admission was that the injured persons were not his accomplices. The court agreed with the prosecutor that such evidence would be admissible. The court said that, in light of recent United States Supreme Court authority, it would be "cautious" in deciding which issues should be submitted to the jury.  Upon the prosecutor's request, the court agreed to take judicial notice of the probation report in the 1992 case. Also at the prosecutor's request, the court found on the issue of identity that defendant was the person who suffered both prior convictions alleged to be strikes.

The trial court marked as People's Exhibit 25 that portion of the probation report from defendant's 1992 case containing his statement to the probation officer, which the prosecutor argued amounted to his de facto admission that the people he injured were not his accomplices. Following argument, the court ruled that defendant's statement to the probation officer was relevant and admissible on the issue of whether the persons defendant injured were his accomplices.

The court then formalized its ruling that People v. Guerrero, supra, 44 Cal.3d 343 should be "revisit[ed]" to allow "a live witness" to testify at a trial on a strike allegation regarding facts that were not at issue and thus were not litigated at the time of the initial conviction. The court ruled that the issue whether the injured persons were accomplices would be decided by the jury. It reiterated its earlier ruling that the serious bodily injury suffered by those persons amounted to great bodily injury as a matter of law.

At the resumed jury trial on the bifurcated allegations, the trial court instructed the jury to "totally disregard" the evidence related to our prior opinion. The prosecutor called as a witness a California Highway Patrol (CHP) officer who had pursued defendant during the incident that resulted in the 1992 conviction. The officer testified that he saw only one person in the car being pursued and, after the crash, found only defendant in the car and saw no other persons leaving the area. The court read to the jury People's Exhibit 25, the portion of the 1992 probation report containing defendant's statement.

The prosecutor argued to the jury that defendant's statement to the probation officer, combined with the testimony of the CHP officer and the other evidence already adduced, allowed only one

reasonable inference, i.e., that the persons defendant injured were
not his accomplices. Defense counsel argued that defendant's
statement to the probation officer was silent as to who had been
injured and their relationship to defendant; moreover, the CHP
officer was testifying from memory about an event that happened
12 years previously. The prosecutor replied by asking the jury to
use common sense and draw reasonable inferences.

The trial court instructed the jury. Regarding the 1992 conviction,
the court informed the jury that, if it found true the allegation that
defendant was convicted of violating Vehicle Code section 2800.3,
it also had to determine whether he "committed that offense
without an accomplice."

The jury found both prior conviction allegations to be true, and
found that defendant did not have an accomplice in the offense
resulting in the 1992 conviction. Defendant's motions for a
mistrial, a directed verdict, and a judgment in his favor
notwithstanding the verdict were denied.

Defendant later filed a motion for a new trial of the bifurcated
issues. The prosecutor filed opposition, contending that People v.
Guerrero needed to be reconsidered. Following argument, the trial
court denied the new trial motion.

People v. Richardson, 2006 WL 2383834 at *1-5 (Aug. 18, 2006) (Lod. Doc. 4 at 1-11.)  Under

AEDPA, the factual findings of the state court of appeal are presumed to be correct, 28 U.S.C. §

2254(e)(1), and the above statement is consistent with the undersigned's review of the trial court

record.  See RT 562-697.

b.  State Court Opinion

Turning to the merits of petitioner's challenge to the admission of live testimony

in 2004 to prove the 1992 strike, the court of appeal reasoned as follows:

Defendant contends the trial court erred when it permitted the
prosecution to present live testimony on the issue whether he had
an accomplice in the incident resulting in the 1992 conviction. We
find no prejudicial error.

In People v. Woodell, supra, 17 Cal.4th 448, the Supreme Court
summarized the relevant law as follows: "Various sentencing
statutes in California provide for longer prison sentences if the
defendant has suffered one or more prior convictions of specified
types.  A highly publicized example is the 'Three Strikes' law
adopted in 1994, which is involved in this case. [Citation.]  In

13

general, this 'legislation provides longer sentences for certain prior serious or violent felonies popularly denoted "strikes." ' [Citation.] [] Sometimes the definition of the qualifying prior conviction is not completely congruent with the definition of the crime of which the defendant has been convicted. For example, in Guerrero, the alleged prior conviction was for a ' "burglary of a residence." ' [Citation.] The statutory use of the phrase, 'burglary of a residence,' posed a problem because 'there is no offense specifically so defined in the Penal Code.' [Citation.]  A particular burglary conviction might or might not have involved a residence.  We had to decide how the trier of fact in that and similar situations could determine whether the prior conviction qualified under the sentencing scheme. [] In Guerrero, we concluded that, 'in determining the truth of a prior-conviction allegation, the trier of fact may look to the entire record of the conviction' but, we made clear, 'no further.' [Citation.]  This rule, we explained, 'is both fair and reasonable. To allow the trier of fact to look to the entire record of the conviction is certainly reasonable: it promotes the efficient administration of justice and, specifically, furthers the evident intent of the people in establishing an enhancement for "burglary of a residence"- a term that refers to conduct, not a specific crime. To allow the trier to look to the record of the conviction - but no further - is also fair: it effectively bars the prosecution from relitigating the circumstances of a crime committed years ago and thereby threatening the defendant with harm akin to double jeopardy and denial of speedy trial.' [Citation.]"  (Id. at pp. 452-453.)

The trial court opined that the foregoing rule "made sense in a context where the Courts are worried about having old cases retried.  It made sense in a context where you are legitimately and properly concerned about issues of collateral estoppel or res judicata or double jeopardy, none of which obtain in this case, because this matter of whether there was an accomplice in the earlier conviction, and if so, whether that accomplice was the one who was injured in the case, was not an element of that offense. [] It was never looked to, as [defense counsel] properly notes, as a matter of any consequence at that time. The District Attorney had no way of anticipating that at some later date that might be a strike where they would have to determine whether there was or was not an accomplice who was injured in that case."

The trial court's reasoning does not distinguish Guerrero, because it applies to "burglary of a residence" just as well as it does to the present case.  Under prior law, a daytime entry into a residence was second degree burglary, not first degree. [Citation.]  But second degree burglary could also be committed by entering other structures.  Thus, entry of a residence was no more an element of second degree burglary than injury of a non accomplice is an element of Vehicle Code section 2800.3.  Whether the structure was a residence was of no consequence to a second degree burglary conviction. Such a conviction did not establish, for purposes of

14

"collateral estoppel or res judicata or double jeopardy," that the structure was a residence.  Prosecutors could no more have anticipated the 1982 enactment of sections 667, subdivision (a), and 1192.7, which made second degree burglary a serious felony if the structure was a residence, than they could have anticipated the 1994 enactment of the three strikes laws.

Moreover, although the trial court did not "revisit" the 1992 case, in which the issue of accomplice status was never litigated, it did revisit the 1992 facts when it admitted into evidence the years-old recollections of a pursuing peace officer.  This presentation of previously unlitigated facts undermines Guerrero's effort to avoid '"harm akin to ... denial of speedy trial."' [Citation.]  For all these reasons, the trial court's criticisms of Guerrero must be addressed to a court higher than this one. [Citation.]

We next consider whether admission of the CHP officer's testimony was prejudicial. We conclude it was not.

The trial court admitted defendant's statement to the probation officer, as follows: "In an interview conducted at the probation office, for the purpose of this report, the defendant related prior to his attempt at evading the emergency vehicles he had been at a local club where he had joined family members and had consumed two or three beers. [] During this time he became angry at his brothers, who were in the group, in that they were intoxicated and getting in the defendant's face. [] This situation in conjunction with other recent anger issues caused him to escalate in his feelings of agitation, and it was in this state when he passed the C.H.P. patrol vehicle. [] At that point his thought was to get to his residence as quickly as possible as he felt the car he was driving would be impounded should he be stopped, in that he was driving without a license - without a valid license. [] As he continued on his journey and noticed other law-enforcement vehicles joining the pursuit, he became scared, but continued in his flight for home. [] He stated it was the speed of his travel rather than his mild intoxication that caused him to lose control of his vehicle on Cottonwood Avenue and crash into the mobile home park and residences[ FN6] therein. [] The defendant stated he had just purchased the car which he was driving, but had not yet registered it in his name and had not arranged for insurance."

FN6. Contrary to the Attorney General's argument, defendant's statement did not admit "crashing into a 'mobile home park and the residents therein.' " (Italics added.) Defendant never admitted crashing into people.

Thus, defendant's statement admitted losing control of, and crashing, the car. The presence of anyone else in the car during the crash would have been a significant issue. Since defendant chose to speak, it is reasonable to expect that he would have addressed the

1    issue had it arisen. However, his statement made no mention of
     anyone else in the car. Therefore, the jurors could deduce that
2    defendant was alone.

3    This deduction is reasonable because, as the trial court noted, the
     crime of eluding a peace officer "is almost by definition solitary
4    and without an accomplice," unless the passenger somehow assists
     the driver in his or her effort to elude the police.

5
     The deduction that defendant was alone is bolstered by his
6    effective concession that no licensed drivers were with him. His
     stated belief that "the car he was driving would be impounded
7    should he be stopped," because "he was driving without a
     license-without a valid license," allows a reasonable inference that
8    there were no licensed drivers to whom the car could be released in
     lieu of impound. This does not exclude the possibility of
9    unlicensed passengers, the majority of whom are elderly or young
     and hence especially vulnerable.  But defendant's failure to
10   mention elderly or young passengers in the car crash would be all
     the more inexplicable.

11
     In sum, it is not reasonably probable that defendant would have
12   fared better had the CHP officer's testimony been excluded.
     (People v. Watson (1956) 46 Cal.2d 818, 836.)  Because defendant
13   does not contend that the passage of time precluded him from
     effectively challenging the officer's testimony, he has not advanced
14   a federal constitutional speedy trial violation requiring the
     <u>Chapman</u> standard of prejudice. (<u>Chapman v. California</u> (1967)
15   386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711].)

16   <u>People v. Richardson</u>, <u>supra</u>, at *7-9 (Aug. 18, 2006) (Lod. Doc. 4 at 20-27.)

17   c.  <u>Applicable Law</u>

18          The due process inquiry in federal habeas review is whether the admission of

19   evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair.  <u>See</u>

20   <u>Romano v. Oklahoma,</u> 512 U.S. 1, 12–13 (1994).  "A habeas petition bears a heavy burden in

21   showing a due process violation based on an evidentiary decision."  <u>Boyde v. Brown</u>, 404 F.3d

22   1159, 1172 (9th Cir. 2005).  The United States Supreme Court has "defined the category of

23   infractions that violate 'fundamental fairness' very narrowly."  <u>Dowling v. United States</u>, 493

24   U.S. 342, 352 (1990).  In <u>Holley v. Yarborough</u>, 568 F.3d 1091, 1101 (9th Cir. 2009) (internal

25   citation omitted), the Ninth Circuit explained that:

26   /////

                                        16

1            The Supreme Court has made very few rulings regarding the
           admission of evidence as a violation of due process. Although the

2            Court has been clear that a writ should be issued when
           constitutional errors have rendered the trial fundamentally unfair, it

3            has not yet made a clear ruling that admission of irrelevant or
           prejudicial evidence constitutes a due process violation sufficient

4            to warrant issuance of the writ.

5 Even if the trial court erred in allowing evidence to be admitted at trial, petitioner must show that

6 the admission of such evidence had a "substantial and injurious effect on the jury's verdict."

7 See Plascencia v. Alameida, 467 F.3d 1190, 1203 (9th Cir. 2006) (applying Brecht v.

8 Abrahamson, 507 U.S. 619 (1993) harmless error analysis to claim that admission of evidence

9 was improper).

10            Errors of state law are not cognizable on federal habeas review.  Estelle v.

11 McGuire, 502 U.S. 62, 68 (1991) (standard of review for federal habeas court "is limited to

12 deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

13 d.  Discussion

14            During the portion of petitioner's trial that concerned whether his 1992 offense

15 constituted a serious felony, which in turn required a determination that petitioner's victims were

16 not his accomplices, there was no reason for the jury to believe the Herzogs were anything but

17 bystanders injured in the crash.  In addition to C.H.P. Officer Dean Reichenberg's testimony

18 about his recollections of the incident, the jury would have considered the nature of the crime of

19 eluding a peace officer, which, as the court of appeal noted, "is almost by definition solitary and

20 without an accomplice unless the passenger somehow assists the driver in his or her effort to

21 elude the police."  People v. Richardson, supra, at *9.  They would have considered the

22 complaint dated August 24, 1992, in which the People stated upon information and belief that on

23 July 12, 1992,

24            the defendant, Jimmy Richardson, . . . did willfully and unlawfully,
           while operating a motor vehicle with the intent to evade, flee or

25            otherwise elude a pursuing peace officer's motor vehicle while all
           of the following conditions existed: the peace officer's motor

26            vehicle exhibited at least one lighted red lamp visible from the

> front . . . ; the peace officer's motor vehicle was sounding its siren .
> . . ; the peace officer's motor vehicle was distinctively marked; the
> peace officer's motor vehicle was operated by a peace officer and
> that the defendant proximately caused the death and bodily injury
> of EARL HERZOG and BEATRICE HERZOG.

2 Clerk's Transcript ("CT") 387.  The jury would have further considered the record of petitioner's plea of nolo contendere to a violation of Cal. Vehicle Code section 2800. 3 on October 19, 1992.  2 CT 382-385.  And they would have considered a statement petitioner made to a probation officer in which he recounted how, on the night of the 1992 incident, he had been drinking beers in a club with his brothers, became angry at them, was driving home when he passed a C.H.P. patrol car, and sped up to avoid being stopped, as he was driving without a valid license.  He lost control of the car and crashed into a mobile home park.[3]  3 RT 667-668.

Thus, even without Reichenberg's testimony, the jury likely would have deduced that the Herzogs had no role in the 1992 incident except being injured in it.  The court of appeal's factual determination to this effect was not unreasonable under § 2254(d)(2).

Nor was the court of appeal's "harmless error" determination an unreasonable application of clearly established federal law under § 2254(d)(1).  Under Brecht, supra, the question is whether the trial court's admission of the CHP officer's testimony had a "substantial and injurious effect on the jury's verdict."  Petitioner points out that the prosecutor referred to this testimony several times during closing argument.  Even so, in light of the full record before the jury, Reichenberg's testimony did not have a "substantial and injurious effect" on the verdict under Brecht.  Thus petitioner is not entitled to federal habeas relief on this claim.

/////

/////

---

[3] Petitioner argues in Claim 5 that his appellate counsel was ineffective for failing to challenge the admission of this probation report to prove the 1992 strike.  As set forth below, the court finds that counsel was not ineffective.  Insofar as petitioner argues that the probation report was inadmissible to prove a prior strike under California law, that is not an issue for federal habeas review.  See Guzman v. Morris, 644 F.2d 1295 (9th Cir.1981) (federal habeas corpus jurisdiction does not extend to alleged violations of state law).

18

2.  <u>Ineffective Assistance of Appellate Counsel - Recall of Remittitur</u>[4]

Petitioner sought review of the issue in Claim 1 by the California Supreme Court, which denied his petition for review.  The court of appeal subsequently issued a remittitur.[5]  One week later, the California Supreme Court issued a decision "casting a shadow on [the appellate court's ruling] that petitioner's admission to his probation officer was admissible to prove a strike." (Lod. Doc. 20 at 5, citing <u>People v. Trujillo</u>, 40 Cal. 4th 165 (2006).)

In Claim 2, petitioner asserts that his appellate counsel was ineffective for failing to request that the court of appeal recall the remittitur in light of <u>Trujillo</u>.  He argues as follows:

> On direct appeal, the California Court of appeal held the testimony of the California Highway Patrolman was not allowed and it was error for the trial court to use that testimony to prove Petitioner's 1992 prior.  The Court of Appeal held the error was harmless because Petitioner's statement to his probation officer proved the 1992 prior. [Citation.]
>
> However, the California Supreme Court in <u>Trujillo</u> holds: "Permitting a defendant's statement made in a postconviction probation officer's report to be used against him to establish the nature of the conviction would present similar problems, creating harm akin to double jeopardy and forcing the defendant to relitigate the circumstances of the crime." <u>People v. Trujillo</u>, 40 Cal 4th 165, 180 (Dec. 11, 2006).

(Dkt. No. 1 at 31.)  Thus, petitioner argues, if appellate counsel had timely moved to recall the remittitur after <u>Trujill</u>o issued, his 1992 prior strike conviction would have been reversed for insufficient evidence.  (<u>Id</u>.)

/////

/////

---

[4] While this is the third claim in the petition, the court will refer to it as Claim 2 for purposes of clarity, as Claim 3 (below) concerns issues raised in Claim 2.

[5] "An appellate division must issue a remittitur after a decision in an appeal. . . . If a Court of Appeal decision is not reviewed by the Supreme Court . . . [t]he Court of Appeal clerk must issue a remittitur immediately after the Supreme Court denies review, or the period for granting review expires, or the court dismisses review[.]"  Cal. Rule of Court, Rule 8.272 (a), (b)(1)(A).

1   a.  Facts

2              In its 2011 published decision addressing petitioner's state habeas claims, the

3   California Court of Appeal, Third Appellate District, set forth the relevant facts as follows:

4              Petitioner appealed his 2004 conviction to this court. (C049430)
               He claimed the trial court erred when it (1) determined serious
5              bodily injury under Vehicle Code section 2800.3 was the legal
               equivalent of great bodily injury under the Three Strikes law; (2)
6              decided that it, instead of the jury, would determine whether the
               victims suffered great bodily injury; and (3) admitted the CHP
7              officer's testimony to establish the 1992 evasion victims were not
               accomplices. Petitioner did not challenge admitting the 1992
8              probation report statement. In fact, petitioner acknowledged in his
               opening brief that a defendant's admission contained in a probation
9              report was admissible to prove a strike.  People v. Monreal (6th
               Dist.1997) 52 Cal.App.4th 670, 679, 60 Cal. Rptr.2d 737
10             (Monreal) had so held.

11             In an unpublished opinion filed August 18, 2006, we affirmed the
               judgment. . . .
12
               [W]e agreed with petitioner's argument challenging the admission
13             of the CHP officer's live testimony.  Guerrero prevented admitting
               the officer's testimony, as it was outside the record of conviction.
14             However, we concluded the error was harmless, as petitioner's
               admission to the probation officer provided sufficient evidence
15             establishing his victims were not accomplices. The jurors could
               deduce petitioner was alone from his statement not mentioning
16             anyone else being in the car.

17             Petitioner sought review by the California Supreme Court, but on
               November 29, 2006, the high court denied his petition for review.
18             Our court issued a remittitur on December 4, 2006.

19             One week later, the Supreme Court on December 11, 2006, issued
               an opinion casting a shadow on our ruling that petitioner's
20             admission to his probation officer was admissible to prove a strike.
               In People v. Trujillo (2006) 40 Cal.4th 165, 51 Cal. Rptr.3d 718,
21             146 P.3d 1259 (Trujillo ), the high court determined a defendant's
               postplea admission to a probation officer regarding a prior criminal
22             action is not part of that action's "record of conviction," and the
               statement cannot be admitted to establish the prior conviction
23             qualified as a strike. [Citation.]  Trujillo overruled Monreal and
               another Court of Appeal decision that upheld using admissions in
24             probation reports to prove a strike, People v. Mobley (4th Dist.,
               Div.1, 1999) 72 Cal.App.4th 761, 796, 85 Cal. Rptr.2d 474.
25
               About one year later, petitioner filed a habeas corpus petition with
26             the trial court. Among other arguments, petitioner claimed Trujillo

1    should apply to his case. . . .

2        . . .

3
     [T]he trial court denied the petition for writ of habeas corpus.
4
         . . .
5
     Petitioner now seeks habeas relief from this court. He claims . . . he
6    suffered ineffective assistance of counsel when his appellate
     counsel . . .  (3) failed to seek recall of our remittitur within 90
7    days after its issuance after the California Supreme Court issued
     Trujillo.
8

9   In re Richardson, 196 Cal. App. 4th at 653-656.  (See Lod. Doc. 20, as revised by Lod. Doc. 23,

10  24.)

11  b. State Court Opinion

12          As to the merits of petitioner's argument that his appellate counsel rendered

13  ineffective assistance, the state court on habeas review reasoned as follows:

14       Petitioner next claims his appellate counsel rendered ineffective
         assistance by not asking us to recall the remittitur we issued in
15       2006 after the Supreme Court denied his petition for review.  We
         disagree.  As there was no valid basis on which we could have
16       recalled the remittitur, counsel was not deficient for refusing to
         make the request.
17
         "For good cause, a remittitur may be recalled (Cal. Rules of Court,
18       rule 8.272(c)(2)), but good cause is limited. ' "The recall may not
         be granted to correct judicial error." ' [Citations.]  Other than to
19       correct clerical errors, a remittitur may be recalled only on the
         ground of fraud, mistake, or inadvertence. [Citation.]  '[A]
20       decision is inadvertent if it is the result of oversight, neglect or
         accident, as distinguished from judicial error.' [Citation.]  'This
21       remedy [recalling the remittitur], though described in procedural
         terms, is actually an exercise of an extraordinary substantive power
22       ...; its significant function is to permit the court to set aside an
         erroneous judgment on appeal obtained by improper means.' (9
23       Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 847, p. 909.)" (In
         re Gray (2009) 179 Cal.App.4th 1189, 1195-1196, 102 Cal.
24       Rptr.3d 551.)

25       No cause existed to justify recalling the remittitur. There is no
         evidence whatsoever that our decision on appeal from petitioner's
26       2004 conviction resulted from fraud, mistake, or inadvertence. The

                                          21

decision was not the result of any oversight, neglect, accident, or other clerical error. The decision was not obtained by improper means in any respect, and thus was not subject to remittitur recall.

In an argument he did not make before the trial court, petitioner cites to an exception that purports to allow recalling a remittitur where the decision was based on judicial error.  "An 'exception' to the rule that a remittitur cannot be recalled to correct an error of law was recognized by California's Supreme Court in <u>People v. Mutch</u> (1971) 4 Cal.3d 389 [93 Cal. Rptr. 721, 482 P.2d 633]. 'The remedy of recall of the remittitur may ... be deemed an adjunct to the writ [of habeas corpus], and will be granted when appropriate to implement the defendant's right to habeas corpus' to correct judicial error.  (<u>Id</u>. at pp. 396-397 [93 Cal. Rptr. 721, 482 P.2d 633], citing <u>In re Mitchell</u> (1968) 68 Cal.2d 258, 263 [65 Cal. Rptr. 897, 437 P.2d 289].)" [Citation.]  In these circumstances, a motion to recall the remittitur is the equivalent of habeas corpus. (<u>People v. Collins</u> (1963) 220 Cal.App.2d 563, 566, 33 Cal. Rptr. 638.)

Petitioner claims he was entitled to recall of the remittitur, and to habeas corpus relief, because at the time we issued our remittitur, his appeal from his 2004 conviction and sentence under the Three Strikes law was not yet final for purposes of determining <u>Trujillo</u>'s retroactivity.  Under the rule that even a nonretroactive decision governs all cases still pending on direct review when the decision is rendered (<u>People v. Guerra</u> (1984) 37 Cal.3d 385, 400, 208 Cal. Rptr. 162, 690 P.2d 635), petitioner argues he was entitled to the benefit of <u>Trujillo</u> because his appeal was not yet final.

He asserts his appeal was not final for purposes of application of <u>Trujillo</u> until the time allowed to petition for a writ of certiorari in the United States Supreme Court had expired.  FN1 That time period, a period of 90 days from the state Supreme Court's denial of his petition for review (U.S. Supreme Ct. Rules, rule 13, 28 U.S.C. § 2101(c)), expired on February 27, 2007, almost three months after we issued the remittitur.  Petitioner claims he suffered ineffective assistance when his appellate counsel did not seek recall of our remittitur during that time period.

FN1. A writ of certiorari issued by the United States Supreme Court is a remedy available on direct review of certain state court cases. By that writ, the high court may review final judgments rendered by the highest court of a state "in which a decision could be had ... where the validity of a treaty or statute of the United States is drawn in question or where the validity of a statute of any State is drawn in question on the ground of its being repugnant to the Constitution, treaties, or laws of the United States, or where any title, right, privilege, or immunity is specially set up or claimed under the Constitution or the treaties or statutes of ... the United States." (28 U.S.C. § 1257(a).)

22

For purposes of determining retroactivity, a judgment becomes final "at that point at which the courts can no longer provide a remedy on direct review." (In re Pine (1977) 66 Cal.App.3d 593, 595, 136 Cal. Rptr. 718.)  It has long been the rule in federal and California courts that a case is not final for purposes of determining the retroactivity and application of a new decision addressing a federal constitutional right until direct appeal is no longer available in the state courts, and the time for seeking a writ of certiorari has lapsed or a timely filed petition for that writ has been denied. [Citations.]

However, while the retroactivity of a United States Supreme Court opinion is a matter of federal law, state courts independently determine whether a state court decision addressing a matter of state law is retroactive. (American Trucking Assns. v. Smith (1990) 496 U.S. 167, 177, 110 S.Ct. 2323, 2330, 110 L.Ed.2d 148, 159.)

The parties have not cited to us, and we have not found, any California opinion determining the finality of a criminal case for purposes of calculating the retroactivity of a California Supreme Court case addressing an issue of state criminal law, such as Trujillo.  Petitioner relies on People v. Vieira (2005) 35 Cal.4th 264, 25 Cal. Rptr.3d 337, 106 P.3d 990, to claim his appeal was not final until the time for seeking certiorari had expired.  In that case, our Supreme Court determined a statutory amendment favorable to a criminal defendant would apply to any case not yet final, and it held a case was not final for purposes of determining the new statute's retroactivity until the time for seeking a writ of certiorari had passed. [Citations.]

Opposing petitioner, the Attorney General argues Vieira is limited to only favorable statutory changes and does not apply to changes in law imposed by a judicial decision.  However, neither party answers the question of whether the potential availability of petitioning for a writ of certiorari should affect the retroactivity of a state Supreme Court decision that does not involve a federal constitutional right. As we explain, we need not resolve that issue in order to decide this case.

Even when we assume, for purposes of argument only, that petitioner's appeal from his 2004 conviction was not final when Trujillo was announced because he still could have sought certiorari, and if we assume appellate counsel's performance was deficient for not seeking recall of the remittitur on that basis, we still would not conclude petitioner suffered ineffective assistance by counsel's omission. That is because petitioner suffered no prejudice and would not have received a more favorable sentence had counsel sought recall.

There was additional evidence in the record of conviction besides

petitioner's 1992 probation report admission that established the victims of his evasion crime were not accomplices and that conviction qualified as a prior strike. That evidence was our opinion on his appeal of the 1992 evasion conviction, evidence the trial court hearing the strike allegations wrongly excluded. "[A]ppellate opinions, in general, are part of the record of conviction that the trier of fact may consider in determining whether a conviction qualifies under the sentencing scheme at issue." (Woodell, supra, 17 Cal.4th at p. 457, 71 Cal. Rptr.2d 241, 950 P.2d 85; see also Cal. Rules of Court, rule 8.500(c)(2) [the Supreme Court normally will accept the Court of Appeal opinion's statement of facts when deciding a petition for review].)

"If the appellate court did state the pertinent facts, a trier of fact is entitled to find that those statements accurately reflect the trial record. Moreover, the defendant, who suffered the conviction and took the appeal, would know of and be able to challenge any material flaws or omissions in the opinion." (Woodell, supra, 17 Cal.4th at p. 457, 71 Cal. Rptr.2d 241, 950 P.2d 85.)

The Woodell court made clear that appellate opinions introduced as part of the record of conviction to prove a strike may be admitted into evidence even though they may contain factual statements that are not independently admissible under the hearsay rule.  Petitioner's 1992 statement to his probation officer may be such hearsay. [Citation.]  Opinions containing hearsay are admissible because they are not admitted to prove the truth of the hearsay statements. The question before the fact finder when determining a strike allegation is not whether the defendant actually did the actions the opinion states he did, but instead is only whether the defendant's conviction was based on the facts needed to establish a strike. (Woodell, supra, 17 Cal.4th at p. 460, 71 Cal. Rptr.2d 241, 950 P.2d 85.)

For example, in Woodell, the defendant was charged with burglary and a prior strike conviction out of North Carolina of assault with a deadly weapon inflicting serious injury. The trial court admitted the North Carolina appellate court's opinion, which recited as evidence defendant's statement to an inmate that he was going to kill someone, and the inmate's statement that he saw the defendant sharpening a scissor blade, and five minutes later saw the defendant stab the victim. (Woodell, supra, 17 Cal.4th at pp. 451-452, 71 Cal. Rptr.2d 241, 950 P.2d 85.)

The Supreme Court held the appellate opinion was part of the record of conviction and was properly admitted by the trial court for purposes of determining the existence of a prior strike. The high court saw "no reason to limit the record of conviction to the trial court record and to preclude reference to the appellate court record, including the appellate opinion.  Indeed, the appellate record might show the conviction was no longer valid.  As the

24

Attorney General notes, it would be absurd to preclude reference to an appellate opinion to show that a conviction had been reversed or modified to a lesser, nonqualifying offense. We also see no basis for allowing one party (the defendant), but not the other party (the prosecution), to rely on the appellate opinion." (Woodell, supra, 17 Cal.4th at p. 456, 71 Cal. Rptr.2d 241, 950 P.2d 85.)

The Supreme Court also determined such use of an appellate opinion is not barred by the hearsay rule.  The opinion was admissible "for the nonhearsay purpose of determining the basis of the conviction." (Woodell, supra, 17 Cal.4th at p. 459, 71 Cal. Rptr.2d 241, 950 P.2d 85.)  In that case, to decide whether the prior conviction qualified as a strike, the court could look to the North Carolina appellate opinion to determine whether the basis of the conviction was personal use of a weapon, which would qualify the prior as a strike, or vicarious liability for someone else who used the weapon, which would disqualify the prior as a strike. The court noted defendant's and the inmate's statements, if offered to prove their truth, would be inadmissible unless an exception to the hearsay rule applied. (Ibid.)

However, the question for the fact finder "was not whether defendant did precisely those things, but only whether defendant's conviction was based on personal weapon use or vicarious liability. The opinion, as a whole, can be considered to decide this question. The appellate court's discussion of the evidence is relevant and admissible, not to show exactly what the defendant did, but to show whether the trial court found, at least impliedly, that the conviction was based on personal use rather than vicarious liability." (Woodell, supra, 17 Cal.4th at p. 460, 71 Cal. Rptr.2d 241, 950 P.2d 85.)

So it is here. Our opinion on petitioner's appeal from his 1992 evasion conviction was admissible in his 2004 trial to show whether the trial court in 1992 found, at least impliedly, that his conviction for evasion was based on his inflicting serious bodily injury to nonaccomplices. We found that it was, and the trial court was entitled to rely upon our opinion for that basis.

Thus, if petitioner had sought recall of the remittitur on the basis of judicial error under Trujillo, we would have denied the request. Our opinion on the 1992 evasion conviction stated petitioner's victims were occupants of a mobile home that was damaged by petitioner's crash. Our opinion is evidence in the record of conviction that establishes the victims of the 1992 evasion conviction were not accomplices, and therefore the evasion conviction qualifies as a prior strike. Trujillo would not have changed this result.

Even if the Supreme Court were ultimately to limit the scope of Woodell and determine under the rule of Trujillo that appellate

opinions are not part of the record of proceedings to the extent they
rely on a probation report as the basis for their statement of facts,
our opinion on the appeal of defendant's 1992 evasion conviction
would satisfy the higher standard. At the trial court hearing in that
case to accept defendant's no contest plea, and before the trial court
accepted defendant's plea, defense counsel agreed on the record
that the victims of that crime were not accomplices. To establish
the factual basis for defendant's plea, the prosecutor stated:
"[W]hile driving a vehicle in excessive speed in the county of
Sacramento, the defendant was chased by marked units with red
lights and sirens. He crashed. As a result of the crash, debris
caused injury to two victims in a residence." The court then asked
defense counsel whether he wished to comment on the factual
basis, and he replied he did not. The court determined this was a
sufficient factual basis to support defendant's plea and defendant
did not object. This exchange before defendant entered his plea is
evidence in the record of proceedings that supported the statement
of facts in our earlier opinion, and thereby rendered that opinion
part of the record of proceedings as well.

Petitioner thus did not suffer ineffective assistance when his
appellate counsel did not seek recall of the remittitur.  Counsel had
no ground to seek the relief, and no prejudice flowed from
counsel's decision. Had counsel sought recall, we would have
denied the request as one made on improper grounds and as one
that did not demonstrate a mistake of law worthy of habeas corpus
relief.

In re Richardson, 196 Cal. App. 4th at 662-668.

c.  Applicable Law

        The Sixth Amendment guarantees the effective assistance of counsel.  The United

States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in

Strickland v. Washington, 466 U.S. 668 (1984).

        A petitioner must first show that, considering all the circumstances, counsel's

performance fell below an objective standard of reasonableness.  Id. at 687–88.  After a petitioner

identifies the acts or omissions that are alleged not to have been the result of reasonable

professional judgment, the court must determine whether, in light of all the circumstances, the

identified acts or omissions were outside the wide range of professionally competent assistance.

Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521 (2003).  In assessing an ineffective assistance of

counsel claim, "[t]here is a strong presumption that counsel's performance falls within the wide

26

1   range of professional assistance." Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (citation

2   omitted). Similarly, there is a strong presumption that counsel "exercised acceptable

3   professional judgment in all significant decisions made." Hughes v. Borg, 898 F.2d 695, 702

4   (9th Cir. 1990) (citation omitted).

5         Second, a petitioner must establish that he was prejudiced by counsel's deficient

6   performance. Strickland, 466 U.S. at 693–94. Prejudice is found where "there is a reasonable

7   probability that, but for counsel's unprofessional errors, the result of the proceeding would have

8   been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine

9   confidence in the outcome." Id.; see also Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000).

10        As both prongs of the Strickland test must be satisfied to establish a constitutional

11  violation, failure to satisfy either prong requires that an ineffective assistance claim be denied.

12  See Strickland, 466 U.S. at 697; Rios v. Rocha, 299 F.3d 796, 805 (9th Cir. 2002) ("[f]ailure to

13  satisfy either prong of the Strickland test obviates the need to consider the other").

14        In Harrington v. Richter, 131 S. Ct. 770 (2011), the Supreme Court addressed the

15  standard for ineffective assistance of counsel claims brought under AEDPA's deferential

16  standard of review. "The pivotal question is whether the state court's application of the

17  Strickland standard was unreasonable[,]" which is a different question from "asking whether

18  defense counsel's performance fell below Strickland's standard." Id. at 785.

19        The Strickland standard is a general one, so the range of reasonable
20        applications is substantial. Federal habeas courts must guard
          against the danger of equating unreasonableness under Strickland
          with unreasonableness under § 2254(d). When § 2254(d) applies,
21        the question is not whether counsel's actions were reasonable. The
          question is whether there is any reasonable argument that counsel
22        satisfied Strickland's deferential standard.

23  Id. at 788 (citations omitted).

24  d. Discussion

25        As set forth above, petitioner asserts that he would have been entitled to the

26  equivalent of habeas relief if his appellate counsel had moved for recall of the remittitur after

1   Trujillo issued.

2           On habeas review, the court of appeal disagreed.  It held that, even if appellate

3   counsel had timely moved to recall the remittitur, and even if petitioner's statements to his

4   probation officer were no longer valid evidentiary support for the 1992 strike under Trujillo,

5   petitioner would have suffered no prejudice, as the result would have been the same.  This was

6   because two additional pieces of evidence showed that the Herzogs were not petitioner's

7   accomplices[6]: the court of appeal's 1993 opinion affirming the evasion conviction ("1993

8   opinion") and the record of the hearing at which petitioner pled no contest to the evasion charge.

9   "Had counsel sought recall," the court of appeal concluded, "we would have denied the request ...

10  as one that did not demonstrate a mistake of law worthy of habeas corpus relief."  196 Cal. App.

11  4th at 668.

12          The court reviews these two pieces of evidence in turn.

13          The 1993 Opinion

14          On June 30, 1993, the Court of Appeal for the Third Appellate District issued an

15  unpublished opinion affirming the 1992 judgment against petitioner on the evasion charge.  The

16  court set forth the facts of the incident, noting: "Since this appeal follows a nolo contendere plea,

17  we take the facts from the probation report."  2 CT 398.

18          Defendant met family members for beer at a club in Sacramento on
            the evening of July 12, 1992.  An argument developed.  Defendant,
19          whose driver's license was suspended, drove away in an agitated
            state.
20
            At around 1:45 a.m., defendant's car, going 90 miles per hour,
21          passed a California Highway Patrol unit on westbound State Route
            50 near 65th Street.  The patrol car activated its emergency lights.
22          Defendant turned onto southbound Highway 99.  The officers
            pursued him, joined by others, at speeds of 90 to 95 miles per hour.
23          Defendant got off the freeway at Mack Road, forcing a slower
            vehicle onto the shoulder, and continued eastbound on Mack Road
24

25          [6] Recall that the first source of evidentiary support for this point, the CHP officer's
    testimony that petitioner was alone in the car, had been deemed erroneously admitted by the
26  court of appeal on direct review in 2006.

at 75 to 80 miles per hour, running a red light and a stop sign.

Coming to a 90-degree turn while driving about 85 miles per hour, defendant failed to negotiate the turn, crashed through a cinder block fence, and landed on top of a carport awning attached to a mobile home.  The awning gave way, crashed into a car parked underneath it, and damaged another nearby mobile home.  Two occupants of that mobile home were injured by flying debris.

After defendant's arrest, his blood alcohol level was .05 percent.

2 CT 398.

At trial, state's witness Ross Huggins described these facts as set forth in the 1993 opinion for the jury.  However, the trial court later instructed the jury to disregard the evidence concerning the 1993 opinion.  3 RT 660.

In contrast, the court of appeal on habeas review concluded that the 1993 opinion was admissible at the 2004 trial and constituted "evidence in the record of conviction that establishes the victims of the 1992 evasion conviction were not accomplices, and therefore the evasion conviction qualifies as a prior strike.  Trujillo would not have changed this result."  196 Cal. App. 4th at 667.

The 1992 Plea Colloquy

The court of appeal concluded that another piece of record evidence supported the 2004 finding that the Herzogs were not accomplices.  This was the "exchange before defendant entered his plea" to the evasion charge, in which defense counsel acknowledged that the victims of petitioner's crime were not his accomplices.  The court of appeal determined that this was within the "record of proceedings" in the 1992 evasion conviction and therefore could be used to support finding of a prior strike.

Petitioner points out that the jury was instructed to disregard the 1993 opinion, and the plea colloquy was not offered into evidence at trial.  However, applying state law, the court of appeal determined that this evidence could nonetheless be considered in support of the prior strike as it was properly within the "record of proceedings" of the 1992 evasion case.  See People v. Woodell, 17 Cal. 4th 448, 454 (1998) ("'[T]he record of prior conviction' means all

1  items that could have been used on appeal of the prior conviction, specifically, any items

2  considered a normal part of the record under California Rules of Court, rule 33, or by which it

3  could be augmented pursuant to California Rules of Court, rule 12.")

4           Under <u>Woodell</u>, the court of appeal reasoned, even if the remittitur were recalled

5  and the strike allegation retried, the 1993 opinion and the plea colloquy could be considered to

6  show that the Herzogs were not petitioner's accomplices.  Thus the 1992 incident would still be

7  deemed a strike.

8           Applying the deferential <u>Richter/Strickland</u> standard, petitioner has not shown that

9  the court of appeal was objectively unreasonable in its determination that petitioner was not

10  prejudiced by appellate counsel's conduct.  Thus petitioner is not entitled to relief on his

11  ineffective assistance claim.

12  3.  <u>Reliance on Appellate Opinion to Uphold Prior Strike</u>

13           Petitioner's next two claims concern the evidence cited by the court of appeal in

14  2011 in holding that any error by petitioner's appellate counsel was harmless.  First, petitioner

15  claims that the court's reliance on its 1993 opinion as record evidence of a prior strike violated

16  his Sixth Amendment right to a jury trial.[7]  As discussed in Claim 4, he also argues that the court

17  of appeal's reliance on the plea colloquy was improper.

18  a. <u>State Court Opinion</u>

19           After the court of appeal denied habeas relief on June 13, 2011, petitioner filed a

20  petition for review in the California Supreme Court.  In it, he argued that the court of appeal

21  improperly relied on "[its] own prior opinion" as record evidence showing that the 1992 incident

22  was a strike, such that petitioner was not prejudiced by appellate counsel's conduct.  (Lod. Doc.

23  25.)  The California Supreme Court summarily denied review on September 28, 2011.  (Lod.

24

25       [7] Petitioner in his traverse asserts that this claim "has no relevance because the appellate
opinion was not before the jury for consideration."  (Dkt. No. 20 at 23.)  However, the court will

26  address the merits of this claim as set forth in the petition.

Doc. 26.)

Thus the last reasoned state court decision on this issue is in the court of appeal's June 2011 decision on the ineffective assistance claim, excerpted above.  See In re Richardson, 196 Cal. App. 4th at 667 ("Our opinion is evidence in the record of conviction that establishes the victims of the 1992 evasion conviction were not accomplices, and therefore the evasion conviction qualifies as a prior strike.").

The court of appeal held that its reliance on its 1993 opinion to uphold the strike did not violate petitioner's Sixth Amendment rights.  Id. at 657-660.  In doing so, the court explicitly disagreed with Ninth Circuit precedent, writing as follows:

> In Wilson v. Knowles (9th Cir. 2011) 638 F.3d 1213, a divided federal court held it was an objectively unreasonable application of Apprendi for a trial court to sustain a strike allegation after it, and not a jury, found that in the prior conviction the defendant was not an accomplice and he personally inflicted great bodily injury on the victim. ( Id. at pp. 1215–1216.)
>
> The California Supreme Court disagrees with the Ninth Circuit. "The United States Supreme Court consistently has stated that the right to a jury trial does not apply to the fact of a prior conviction. [Citations.] '[R]ecidivism ... is a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence.' [Citation.]" ( People v. Black (2007) 41 Cal.4th 799, 818.)  The California Supreme Court and numerous other jurisdictions have interpreted the recidivism "exception to include not only the fact that a prior conviction occurred, but also other related issues that may be determined by examining the records of the prior convictions. [Citations.]" (Id. at p. 819; see also People v. McGee, supra, 38 Cal.4th at pp. 703–706.)
>
> We are not bound by the Ninth Circuit's decision in Wilson. (People v. Camacho (2000) 23 Cal.4th 824, 830, fn. 1.)  We are bound to follow Black and McGee. [Citation omitted.] . . .
>
> . . .
>
> [Here,] petitioner's plea was not the only evidence before the trial court in 2004 when it determined the 1992 conviction was a strike.  Our unpublished opinion on the appeal from the 1992 evasion conviction stated it was petitioner who crashed his vehicle while evading law enforcement officers. . . .
>
> That opinion was admissible evidence on which the trial court in

> 2004 could rely. (See People v. Woodell (1998) 17 Cal.4th 448,
> 457 (Woodell ), which we discuss in more detail later.)  Our
> opinion, and not just petitioner's plea, established petitioner was
> convicted for personally inflicting the injuries.

Id. at 659-660.  The court went on to discuss Woodell in the context of petitioner's ineffective assistance claim, as set forth above.  Id. at 667-668.

b. Applicable Law

In Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), the Supreme Court held that, except for the fact of a prior conviction, any facts that increase a defendant's sentence beyond the statutory maximum must be proved to a jury beyond a reasonable doubt.  A judge may find "the fact of a prior conviction."  See Almendarez-Torres v. United States, 523 U.S. 224, 239, 247 (1998).  Courts may reasonably disagree about some of the precise boundaries of the "prior conviction" exception.  Wilson v. Knowles, 638 F.3d 1213, 1215 (9th Cir. 2011); see Kessee v. Mendoza-Powers, 574 F.3d 675, 677 (9th Cir. 2009) ("[T]he task of determining the precise contours of the exception has been left to the federal appellate courts.").

The Ninth Circuit has narrowly construed the prior conviction exception to apply "only to facts directly reflected in the documents of conviction, not to secondary facts that are derived or inferred from a prior conviction or from the conviction documents."  Butler v. Curry, 528 F.3d 624, 645 (9th Cir. 2008) (internal quotation marks and citations omitted).  While the Ninth Circuit has not provided an exhaustive list of "conviction documents" for this purpose, it has held that courts may consider the "charging document, written plea agreement, transcript of the plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented."  United States v. Strickland, 601 F.3d 963, 968 (9th Cir. 2010).  "This list, however, is illustrative and other documents of equal reliability may also be considered."  Id.  At least one district court has concluded that a memorandum of decision by a state court of appeal is a "conviction document" under Butler, such that the "facts directly reflected" in the opinion may be relied upon to show that a prior conviction includes the elements necessary to qualify as a

32

1   strike under the Three Strikes Law.  <u>Cannan v. Hutchens</u>, 2011 WL 2973554, **8-9 (C.D. Cal.

2   July 19, 2011).

3   c. <u>Discussion</u>

4            The question is whether the state courts' reliance on the 1993 opinion to show that

5   the Herzogs were not petitioner's accomplices in 1992 violated petitioner's Sixth Amendment

6   right to a jury trial.

7            In <u>Wilson</u>, the Ninth Circuit determined on federal habeas review that the

8   <u>Apprendi</u> "prior conviction" exception did not apply where a trial court ruling in 2000 "found

9   three additional facts" about defendant's 1993 offenses that qualified them as his first and second

10  strikes, resulting in a Three Strikes sentence of 25 years to life.  The Ninth Circuit held that

11  "[t]he judge's fact-finding seven years after the 1993 conviction extended beyond any reasonable

12  interpretation of the prior conviction exception."  (<u>Id.</u> at 1215.)  It further determined that the trial

13  court's error was not harmless, as it was impossible to know whether Wilson would have been

14  convicted of these additional elements in 1993.  Accordingly, the Ninth Circuit found that

15  Wilson was entitled to habeas relief on his Three Strikes sentence.  (<u>Id.</u>)

16           The instant case is distinguishable from <u>Wilson</u>, because petitioner's 1992 strike

17  conviction was upheld based on a plea colloquy and state court's memorandum of decision, both

18  of which are at least arguably "conviction documents" whose facts may be considered in

19  determining whether a prior conviction constitutes a strike under Ninth Circuit law.

20           Moreover, while the Ninth Circuit narrowly interprets the "prior conviction"

21  exception, other circuits read the exception more broadly.  <u>See, e.g.</u>, <u>United States v. Santiago</u>,

22  268 F.3d 151, 156 (2d Cir. 2001) (Sotomayor, J.) ("In short, we read <u>Apprendi</u> as leaving to the

23  judge . . . the task of finding not only the mere fact of previous convictions but other related

24  issues as well.  Judges frequently must make factual determinations for sentencing, so it is hardly

25  anomalous to require that they also determine the 'who, what, when, and where' of a prior

26  conviction.")  In the absence of a Supreme Court decision to the contrary, the state courts'

1    reliance on the 1993 opinion to uphold the 1992 strike was not an unreasonable application of

2    clearly established federal law.

3            Petitioner also contends that the state courts' reliance on the 1993 opinion

4    violated his Sixth Amendment right to confrontation as set forth in Crawford v. Washington, 541

5    U.S. 36 (2004), which prohibits the admission of "testimonial" hearsay unless the declarant is

6    unavailable and the defendant had a prior opportunity for cross-examination. Id. at 68. Crawford

7    does not apply here for two reasons. First, it was determined as a matter of state law that the

8    1993 opinion was not hearsay, but was admissible "for the nonhearsay purpose of determining

9    the basis of the conviction." In re Richardson, 196 Cal. App. 4th at 666, citing Woodell, 17

10    Cal.4th at 459. Insofar as petitioner argues that the state courts misapplied Woodell, he alleges

11    an error of state law not cognizable on federal habeas review.

12            Second, the Ninth Circuit has held that Crawford applies only to trial testimony

13    and does not apply at sentencing. U.S. v. Littleson, 444 F.3d 1196, 1199 (9th Cir. 2006). Under

14    Supreme Court precedent, the Ninth Circuit explained, "the law on hearsay at sentencing is still

15    what it was before Crawford: hearsay is admissible at sentencing, so long at it is accompanied by

16    some minimum indicia of reliability." Id. at 1200 (internal quotations and citations omitted).

17    Prior convictions such as the 1992 strike are sentencing factors, see Almendarez-Torres, 523 U.S.

18    at 243-44, and the 1993 opinion was sufficiently reliable for this purpose. Thus petitioner is not

19    entitled to relief on this claim under the Crawford or Apprendi line of cases.

20    4. Reliance on Plea Colloquy to Uphold Prior Strike

21            Petitioner next challenges the state courts' reliance on the plea colloquy from his

22    1992 evasion conviction to uphold the prior strike. As discussed above, the court of appeal

23    determined that both the plea colloquy and the 1993 opinion were part of "the record of the prior

24    conviction" under Woodell, and thus could be used to establish that the Herzogs were not

25    petitioner's accomplices.

26    /////

1    Neither party cites to the transcript of the plea colloquy, and it does not appear to

2  be part of the record before this court.  On state habeas review, the court of appeal first cited the

3  plea colloquy in a July 12, 2011 modification to its June 13, 2011 opinion denying petitioner's

4  ineffective assistance claim.  (Lod. Doc. 24.)  The court of appeal did not include record cites in

5  its discussion of the plea colloquy, and petitioner asserts that the transcript was "noticed from the

6  file of the prior appeal, C014739" – i.e., the appeal of his 1992 evasion conviction.  (Ptn. at 35;

7  see CT 397-408).  Petitioner argues that this modification of the court's 2011 opinion "raise[d]

8  an entirely new issue which [had] never been briefed, and amounts to an end run around the rules

9  of appellate procedure" under California law.  (Ptn. at 36.)  He further argues that the court of

10  appeal improperly considered the plea colloquy part of the "record of prior conviction" to uphold

11  the 1992 strike.

12    Petitioner's arguments that the state appellate courts misapplied state law are

13  outside the scope of federal habeas review.  Moreover, petitioner has not shown that the state

14  courts unreasonably applied clearly established federal law by looking to his 1992 plea colloquy

15  as part of the record of conviction.  As noted above, the Ninth Circuit has held that the transcript

16  of the plea colloquy, among other documents, may be used to establish that a defendant pleaded

17  guilty to certain facts establishing "that the conviction is a predicate conviction for enhancement

18  purposes."  Strickland, 601 F.3d. at 968; see Shepard v. United States, 544 U.S. 13, 16 (2005)

19  ("We hold that . . . a later court determining the character of an admitted burglary is generally

20  limited to examining the statutory definition, charging document, written plea agreement,

21  transcript of plea colloquy, and any explicit factual finding by the trial judge to which the

22  defendant assented.")  Thus petitioner is not entitled to habeas relief on this claim.

23  5.  Ineffective Assistance of Appellate Counsel - Probation Report

24    In his final claim, petitioner contends that his appellate counsel was ineffective for

25  failing to argue that petitioner's statements to his probation officer were inadmissible to prove

26  the 1992 strike.

1           Petitioner asserts that, at the time of his appeal, California law was unresolved on

2  the question of whether admissions in probation reports were admissible to prove a strike.  See

3  People v. Reed, 13 Cal. 4th 217, 230 (1996) ("A threshold question arises whether the excerpt

4  from the probation officer's report . . . is part of the record of the prior conviction. . . . We

5  decline to resolve that question[.]")  He argues that "appellate counsel should have been on

6  notice that the issue was open under the Reed opinion and raised the issue in the appeal. . . . Had

7  the issue been properly raised, review would have been granted on a 'grant and hold' basis, and

8  petitioner would have received the benefit of the Trujillo opinion."  (Ptn. at 41-42.)

9           On habeas review, the state court of appeal rejected this claim, reasoning as

10  follows:

> Petitioner claims his appellate counsel rendered ineffective assistance by failing (1) to claim ineffective assistance by trial counsel; (2) to argue before us that the trial court erroneously admitted his 1992 probation report admission to prove a prior strike; and (3) to request we recall the remittitur within 90 days of its issuance on account of Trujillo. Because we have determined petitioner suffered no ineffective assistance by his trial counsel, we need not address his assertion that appellate counsel erred by not claiming trial counsel rendered ineffective assistance.

> As to petitioner's other claims against his appellate counsel, we conclude counsel did not render ineffective assistance. Counsel's decision not to raise the argument before us was reasonable, and there was no valid basis for seeking the remittitur's recall.

> 1. Failure to argue the issue before us

> Petitioner claims appellate counsel's performance on the appeal from his 2004 conviction was deficient because he failed to claim the 1992 probation report admissions were inadmissible to prove a prior strike. This alleged omission occurred before us and in petitioner's petition for review.

> Petitioner also claims the omission was prejudicial. He asserts the Supreme Court would have shirked its duty had it not granted review of his appeal in the face of proper briefing and with the imminent decision in Trujillo.

> We conclude appellate counsel's performance was not deficient. At the time of the appeal, the law allowed using probation report admissions to prove a strike.  Appellate counsel could not have

reasonably known then that the Supreme Court was about to change the law in its <u>Trujillo</u> decision. Counsel thus was not expected to argue against the prevailing law.

"We assess the reasonableness of counsel's performance deferentially. [Citations.]  We consider counsel's performance from his perspective, analyzing counsel's decisions based on what he knew or should have known at the time. [Citations.]" (<u>In re Thomas</u> (2006) 37 Cal.4th 1249, 1257, 39 Cal. Rptr. 3d 845, 129 P.3d 49.)  "The constitutional standard of performance by counsel is 'reasonableness,' viewed from counsel's perspective at the time of his challenged act or omission. [Citations.]" (<u>People v. Gonzalez</u> (1990) 51 Cal.3d 1179, 1243-1244, 275 Cal. Rptr. 729, 800 P.2d 1159, superseded by statute on another point as stated in <u>In re Steele</u> (2004) 32 Cal.4th 682, 691, 10 Cal. Rptr. 3d 536, 85 P.3d 444.)

"In evaluating counsel's performance, we assess both the reasonableness of counsel's decisions and the reasonableness of the investigation that underlay each decision. '[B]efore counsel undertakes to act, or not to act, counsel must make a rational and informed decision on strategy and tactics founded upon adequate investigation and preparation.' [Citations.] ' "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.  In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." ' (<u>In re Lucas</u> (2004) 33 Cal.4th 682, 722 [16 Cal. Rptr.3d 331, 94 P.3d 477], quoting <u>Strickland</u>, <u>supra</u>, 466 U.S. at pp. 690-691 [104 S.Ct. 2052].)" (<u>In re Thomas</u>, <u>supra</u>, 37 Cal.4th at p. 1258, 39 Cal. Rptr. 3d 845, 129 P.3d 49.)

Petitioner claims appellate counsel's failure to recognize the Supreme Court might resolve the issue it left open in <u>Reed</u> – whether admissions in probation reports were admissible to prove a strike – and to raise that argument before us and on a petition for review was not reasonable. We disagree. An attorney is not required to be clairvoyant. As a matter of common sense, an attorney is not required to raise an argument based on an as-yet-to-be-filed opinion. [Citations.]

At the time of petitioner's appeal, two districts of the Court of Appeal had held admissions in probation reports were included in the record of conviction and were admissible to prove a strike. The Supreme Court earlier declined to resolve the issue in <u>Reed</u>, and

thus the appellate opinions were the extant law. It was not unreasonable for appellate counsel to rely upon these opinions and choose not to challenge them in this appeal.

It also was not unreasonable here because the Supreme Court, when it granted review in Trujillo, gave no indication it would resolve the issue it did not address in Reed. The court initially granted review in Trujillo on a "grant and hold" basis behind another case (People v. Samples, S112201) which did not concern the admissibility of probation report admissions to prove a strike. (People v. Trujillo, S130080, Supreme Ct. mins., Feb. 16, 2005; citations omitted.)  The court then ordered briefing in Trujillo on whether the People could appeal a trial court's order that found a prior conviction was not a strike. (People v. Trujillo, S130080, Supreme Ct. mins., May 18, 2005.)  Later, the court ordered supplemental briefing on the merits of the trial court's determination that the prior conviction was not a strike.  (People v. Trujillo, S130080, Supreme Ct. mins., Apr. 26, 2006.)  Nothing in the court's notices in Trujillo would have led an attorney to reasonably believe the court was going to address whether probation report admissions were admissible to prove a strike.

Under these circumstances, appellate counsel's decision not to raise the argument before us or conduct further research into what issues were actually being briefed in Trujillo was reasonable and did not constitute ineffective assistance. Because counsel's performance was not deficient, we need not discuss petitioner's claim of prejudice.

In re Richardson, 196 Cal. App. at 660-662.

Applying the deferential Richter/Strickland standard set forth above, petitioner has not shown that the court of appeal was objectively unreasonable in its conclusion.  Because the admissibility of probation reports to prove a strike was an open question under California law when petitioner filed his appeal, petitioner's counsel's decision not to raise this issue fell within the bounds of effective assistance.

As petitioner has not shown that any of the above claims merit relief, the undersigned will recommend that the petition be denied in its entirety.

Accordingly, IT IS HEREBY RECOMMENDED that:

1.  The petition for writ of habeas corpus (ECF No. 1) be denied; and

2.  This case be closed.

1    These findings and recommendations are submitted to the United States District

2    Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

3    days after being served with these findings and recommendations, any party may file written

4    objections with the court and serve a copy on all parties.  Such a document should be captioned

5    "Objections to Magistrate Judge's Findings and Recommendations."  In his objections petitioner

6    may address whether a certificate of appealability should issue in the event he files an appeal of

7    the judgment in this case.  See Rule 11, Federal Rules Governing Section 2254 Cases (the district

8    court must issue or deny a certificate of appealability when it enters a final order adverse to the

9    applicant).  Any reply to the objections shall be served and filed within fourteen days after

10   service of the objections.  The parties are advised that failure to file objections within the

11   specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951

12   F.2d 1153 (9th Cir. 1991).

13    Dated: August 29, 2013

14

15                                                    CAROLYN K. DELANEY
                                                      UNITED STATES MAGISTRATE JUDGE
16

17

18   2
     rich2996.hc
19

20

21

22

23

24

25

26